UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SIERRA M. B.,

                            Plaintiff,
                                                        1:20-CV-0127
v.                                                      (GTS)

ANDREW SAUL, in his official capacity as
Acting Commissioner of the Social Security
Administration,

                            Defendant.
_____

APPEARANCES:                                OF COUNSEL:

LEGAL AID SOCIETY OF NORTHEASTERN NY        MARY MARTHA WITHINGTON, ESQ.
   Counsel for Plaintiff
40 New Street
Saratoga Springs, NY 12866

SOCIAL SECURITY ADMINISTRATION              SEAN SANTEN, ESQ.
OFFICE OF GENERAL COUNSEL–REGION I          Special Assistant U.S. Attorney
   Counsel for Defendant
JFK Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

GLENN T. SUDDABY, Chief United States District Judge

**<u>DECISION and ORDER</u>**

        Currently before the Court, in this action filed by Sierra M. B. ("Plaintiff") against the

Commissioner of Social Security Andrew Saul[1] ("Defendant") pursuant to 42 U.S.C. §§ 405(g)

and 1383(c), are (1) Plaintiff's motion for judgment on the pleadings, and (2) Defendant's

motion for judgment on the pleadings.  (Dkt. Nos. 9, 11.)  For the reasons set forth below,

_____

        [1]        Andrew Saul was sworn in as the Commissioner of the Social Security
Administration on June 17, 2019.

Plaintiff's motion for judgment on the pleadings is denied, Defendant's motion for judgment on the pleadings is granted, and Plaintiff's Complaint is dismissed.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1997, making her six years old at her alleged onset date and 21 years old at the date of the ALJ's decision.  Plaintiff reported having a high school education with involvement in special education.  In her application, Plaintiff alleged disability due to chronic headaches, learning disabilities and difficulty with comprehension, seizures, a history of childhood brain injury, anger issues, emotional issues, and stomach pain.

### B.    Procedural History

Plaintiff applied for Supplemental Security Income on November 16, 2015.[2]  Plaintiff's application was initially denied on February 17, 2016, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at a hearing before ALJ Asad M. Ba-Yunus on August 28, 2017.  On November 3, 2017, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 161-72.)[3]  On August 2, 2018, the Appeals Council reviewed the ALJ's decision and remanded for further consideration on the following issues: (a) the ALJ's failure to admit certain records; (b) the ALJ's failure to

---

[2]      The Appeals Council found on August 2, 2018, that Plaintiff also effectively filed an application for Disability Insurance Benefits under Title II based on the fact that she had sufficient earnings to merit such a claim for benefits prior to the ALJ's first decision on November 3, 2017.  (T. 178.)

[3]      The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

-2-

adjudicate Plaintiff's claim under Title II as well as Title XVI; and (c) failing to provide

sufficient rationale to support the ALJ's findings related to Plaintiff's mental impairments.  (T.

178-79.)  The ALJ conducted a second hearing on February 21, 2019, pursuant to the remand

order.  (T. 42.)  On March 8, 2019, the ALJ issued a written decision, again finding that Plaintiff

was not disabled under the Social Security Act.  (T. 15-34.)  On December 6, 2019, the Appeals

Council denied review , making the ALJ's decision the final decision of the Commissioner.  (T.

1-3.)

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following seven findings of fact and

conclusions of law.  (T. 15-34.)  First, the ALJ found that Plaintiff has not engaged in substantial

gainful activity since her application filing date.  (T. 15.)  Second, the ALJ found that Plaintiff's

epilepsy, learning disability, migraines, depression, and anxiety disorder are severe impairments.

(T. 18.)  Third, the ALJ found that Plaintiff's severe impairments do not meet or medically equal

one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"); specifically,

the ALJ considered Listings 11.02, 12.04, 12.05, and 12.06.  (T. 19-22.)  Fourth, the ALJ found

that Plaintiff has the residual functional capacity ("RFC") to perform

> work at all exertional levels but with the following nonexertional
> limitations: she must avoid all hazards including unprotected heights
> and dangerous machinery; would require a low stress environment
> defined as one in which the individual may perform unskilled, simple,
> routine tasks, may have occasional interaction with supervisors,
> coworkers, and the general public, and can tolerate occasional
> changes to a routine work setting.

(T. 22.)  Fifth, the ALJ found that Plaintiff has no past relevant work.  (T. 33.)  Sixth, the ALJ

found that Plaintiff is not disabled because she remains able to perform a significant number of

jobs in the national economy, including housekeeper, kitchen helper, and production assembler.

(T. 33.)  The ALJ therefore concluded that Plaintiff is not disabled.

> ### D.     The Parties' Briefing on Their Motions
>
> #### 1.     Plaintiff's Motion for Judgment on the Pleadings

Generally, in her motion, Plaintiff makes four arguments.  (Dkt. No. 9, at 18-25 [Pl.'s

Mem. of Law].)  First, Plaintiff argues that the ALJ erred in failing to find that her seizure

disorder and intellectual disorder meet, equal or functionally equal the relevant Listings.  (*Id.* at

18-20.)  As to her seizure disorder, Plaintiff argues that (a) she has one convulsive seizure per

year and approximately 20 absence seizures per day and the frequencies of these seizures meet

the requirements of Listing 11.02, (b) the ALJ failed to provide significant weight to the opinion

from treating physician Dr. Bujarksi or credit Plaintiff's and her mother's reports and

observations about her seizures and her level of functioning, and (c) the ALJ erred in finding less

than marked limitations in any of the relevant categories of functional abilities based on the

available evidence.  (*Id.*)  As to her intellectual disorder, Plaintiff argues that (a) her assessed IQ

score meets Listing 12.05 and the evidence in the record demonstrates that she has a severe

impairment in executive functioning, and (b) the ALJ erred in relying on opinions from non-

treating consultative examiners and ignoring evidence from her school records, medical records,

and the testimony of Plaintiff and her mother that supports greater functional limitations.  (*Id.*)

Second, Plaintiff argues that the ALJ erred in failing to afford controlling weight to the

opinion of treating neurologist Dr. Bujarksi.  (*Id.* at 21.)  More specifically, Plaintiff argues that

the ALJ ignored evidence of her inability to attend work on a consistent basis that supported Dr.

Bujarksi's opinion that she would be off-task for more than 20-percent of the workday; she argues in particular that it is permissible for a physician to rely on a patient's subjective reports when assessing limitations produced by mental impairments.  (*Id.*)

Third, Plaintiff argues that the ALJ erred in failing to consider all of her impairments in combination with each other when determining her RFC.  (*Id.* at 21-23.)  More specifically, Plaintiff argues that the ALJ failed to consider her migraine headaches and chronic fatigue related to her seizures, as well as her history of abdominal pain, irritable bowel syndrome, depression, and anxiety.  (*Id.*)

Fourth, Plaintiff argues that the ALJ's decision is contrary to the substantial weight of the evidence and incorrect as a matter of law.  (*Id.* at 23-25.)  More specifically, Plaintiff argues that the ALJ failed to (a) consider all of her impairments, (b) give appropriate weight to her subjective complaints of headaches and fatigue, (c) properly assess her credibility, (d) consider the testimony of the vocational expert related to her inability to remain on-task, and (e) appropriately weigh testimony from her and her mother.  (*Id.*)

### 2.     Defendant's Motion for Judgment on the Pleadings

Generally, in his motion, Defendant makes four arguments.  (Dkt. No. 11, at 15-26 [Def.'s Mem. of Law].)  First, Defendant argues that substantial evidence supports the ALJ's finding that Plaintiff does not meet or medically equal a Listing.  (*Id.* at 15-20.)  As to her seizure disorder, Defendant argues that (a) her tonic-clonic or convulsive seizures do not occur with sufficient frequency to meet the Listing, (b) her absence seizures are not documented by objective evidence or observation and are not sufficiently described to permit a reasonable

finding related to her reported frequency of these seizures (or whether they are in fact seizures at all), and (c) her seizures of both types have improved and lessened with medications.  (*Id.*)  As to her intellectual disorder, Defendant argues that (a) the record does not substantiate sufficient deficits in adaptive functioning, and (b) the weight of the evidence supports the ALJ's finding that Plaintiff does not have marked limitations in any of the relevant areas of functioning related to the Listing.  (*Id.*)

Second, Defendant argues that substantial evidence supports the ALJ's decision to discount a portion of Dr. Bujarski's opinion because it was inconsistent with his own treatment notes and not supported by the evidence, including evidence that a change in her medications decreased her absence seizure symptoms to once or twice per month.  (*Id.* at 20-24.)  Defendant also argues that the ALJ appropriately based his finding on other opinions and evidence that contradict Dr. Bujarksi's opinion on how often Plaintiff would be off-task in the workplace.  (*Id.*)

Third, Defendant argues that the ALJ in fact did consider all of Plaintiff's impairments in combination, and that Plaintiff has not pointed out any relevant impairment or matter that the ALJ actually failed to consider.  (*Id.* at 24-35.)

Fourth, Defendant argues that substantial evidence supports the ALJ's resolution of any conflicts between Plaintiff's subjective reports of symptoms and the objective evidence because the ALJ adequately explained why he made findings contrary to the testimony from Plaintiff and her mother, and Plaintiff has not explained either (a) why her reports of migraines should have been credited in a different manner, and (b) how they were not accommodated by the limitations the ALJ included in the RFC.  (*Id.* at 25-26.)

## II.     APPLICABLE LEGAL STANDARDS

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial

evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.    Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin*, 758 F.3d 146,

150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA

will not review the claim further."  *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

## III.    ANALYSIS

### 1.    Whether the ALJ Erred in Finding that Plaintiff Does Not Meet or Equal A Listing

 After careful consideration, the Court answers this question in the negative for the

reasons stated in Defendant's memorandum of law.  (Dkt. No. 11, at 15-20 [Def.'s Mem. of

Law].)  To those reasons, the Court adds the following analysis.

"The Commissioner's determination as to whether the claimant's impairment meets or

equals the Listings must reflect a comparison of the symptoms, signs, and laboratory findings

about the impairment, including any functional limitations that result from the impairment, with

the corresponding criteria shown for the listed impairment."  *Hamedallah ex rel. E.B. v. Astrue*,

876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012) (D'Agostino, J.).  To meet or equal a Listing, the

claimant's impairment "must satisfy all of the medical criteria of the particular listing."  *Myers v.*

*Comm'r of Soc. Sec.*, 15-CV-1388, 2017 WL 1184208, at *2 (N.D.N.Y. Mar. 29, 2017) (Sharpe,

J.).  "If a plaintiff's 'impairment manifests only some of those criteria, no matter how severely,

such impairment does not qualify.'"  *Capron v. Comm'r of Soc. Sec.*, 12-CV-1618, 2014 WL

581711, at *5 (N.D.N.Y. Feb. 14, 2014) (Baxter, M.J., McAvoy, J.).  "It is the plaintiff's burden

to establish that his or her medical conditions meet *all* of the specific medical criteria of a

particular listed impairment."  *Capron*, 2014 WL 581711, at *5 (emphasis in original).

Plaintiff argues that the ALJ erred in failing to find that her seizure disorder met Listing 11.02 and her intellectual disability met Listing 12.05.  Turning first to her seizure disorder and Listing 11.02, Plaintiff must demonstrate both a detailed description of a typical seizure and one of the following: (1) generalized tonic-clonic seizures occurring at least once a month for at least three consecutive months despite adherence to prescribed treatment; (2) dyscognitive seizures occurring at least once a week for at least three consecutive months despite adherence to prescribed treatment; or (3) generalized tonic-clonic seizures, occurring at least once every two months for at least four consecutive months despite adherence to prescribed treatment, or dyscognitive seizures occurring at least once every two weeks for at least three consecutive months despite adherence to prescribed treatment,[4] either of which is accompanied by a marked limitation in one of the following: (a) physical functioning, (2) understanding, remembering or applying information, (3) interacting with others, (4) concentrating, persisting or maintaining pace, or (5) adapting or managing oneself.  20 C.F.R. § 404, Subpart P, Appendix 1, Listing 11.02.

Notably, integral to meeting this Listing is the requirement for a detailed description of the seizures.  The regulations specify that there must be "at least one detailed description of your seizures from someone, preferably a medical professional, who has observed at least one of your

---

[4]      The Listings define "generalized tonic-clonic seizures" as those characterized by a loss of consciousness accompanied by a phases of muscle tensing and convulsions with possible tongue-biting and incontinence, while "dyscognitive seizures" are defined as those characterized by alteration of consciousness without convulsions or loss of muscle control with manifestations such as blank staring, change of facial expression or automatism.  20 C.F.R. § 404, Subpart P, Appendix 1, Listing 11.00(H)(1).

typical seizures," and, if the claimant experiences more than one type of seizure, a description of each type is required.  20 C.F.R. § 404, Subpart P, Appendix 1, Listing 11.00(H)(2).

The ALJ found that Plaintiff had failed to establish the frequency and intensity of seizure activity necessary to meet any part of Listing 11.02.  (T. 18.)  The ALJ noted in particular that Plaintiff's seizures had been relatively well-controlled on medication, with only a brief recurrence of tonic-clonic or convulsive seizure activity in October and November 2018.  (T. 18.) The ALJ also recognized that Plaintiff reported more frequent dyscognitive seizures, but found that the medical evidence did not include objective documentation to substantiate the reported frequency of those seizures, and there were no reported observations of these seizures by another person and no objective testing demonstrating that these reported episodes are even in fact true seizure activity.  (T. 25-26.)

The ALJ's finding related to Listing 11.02 is supported by substantial evidence.  There appears to be no disagreement that Plaintiff's tonic-clonic seizures do not meet the requisite frequency, and the record shows that such seizures have become very infrequent with medication compliance.  As to her dyscognitive seizures, the record indicates that her treating physician was not certain that the symptoms Plaintiff was experiencing as dyscognitive seizures were actually seizure activity or something else, such as pre-ictal phenomena or medication side effects.  (T. 598, 645, 663.)  Particularly, on August 16, 2017, treating neurologist Krzysztof Bujarski, M.D., indicated that Plaintiff's dyscognitive seizures were "subjective phenomenon without any objective evidence that she is having them."  (T. 658.)  While being monitored for seizure activity over multiple days in January 2017, Plaintiff was observed to have multiple tonic-clonic

seizures, but she did not have any of her dyscognitive seziures.  (T. 609-45.)  Given that

Plaintiff's physician had not definitively concluded that Plaintiff's subjectively reported

symptoms were in fact seizure activity, the Court cannot say that the ALJ erred in finding that the

evidence does not support a finding that Plaintiff met Listing 11.02.

Additionally, Defendant is correct that there is no detailed description of Plaintiff's

dyscognitive seizures from anyone who has observed such a seizure.  Without such a description

or any objective evidence that these episodes actually represent a dyscognitive seizure, Plaintiff

cannot meet the Listing.  Plaintiff asserts that "we have multiple occasions in which plaintiff's

mother and other family members have described their observations of [plaintiff's] seizures," but

fails to cite any such descriptions, or to even assert that these alleged descriptions relate to

Plaintiff's dyscognitive seizures specifically (as opposed to her tonic-clonic seizures).  (Dkt. No.

9, at 19 [Pl.'s Mem. of Law].)  Notably, the Court was unable to locate any evidence in the

record that Plaintiff's mother or anyone else had actually witnessed Plaintiff's dyscognitive

seizures, but rather they appear to know of these seizures only from Plaintiff's self-reports.   The

Court therefore finds that the ALJ's finding that Plaintiff has not provided sufficient objective

evidence to substantiate these seizures and their frequency is supported by substantial evidence.

As to Plaintiff's intellectual disability, Listing 12.05, as applicable here, requires a

claimant to demonstrate the following: (1) significantly subaverage general intellectual

functioning as evidenced by either (a) a full scale or comparable IQ score of 70 or below on an

individually administered standardized test of general intelligence, or (b) a full scale or

comparable IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable

part score) of 70 or below on an individually administered standardized test of general

intelligence; (2) significant deficits in adaptive functioning currently manifested by extreme

limitation of one, or marked limitation of two, of the listed areas of mental functioning, namely

(a) understanding, remembering or applying information, (b) interacting with others, (c)

concentrating, persisting or maintaining pace, or (d) adapting or managing oneself; and (3) the

disorder began prior to the attainment of age 22.  20 C.F.R. § 404, Subpart P, Appendix 1,

Listing 12.05(B).[5]

The ALJ found that Plaintiff had a moderate limitation in understanding, remembering or

applying information, a mild limitation in interacting with others, a mild limitation in

concentrating, persisting or maintaining pace, and a moderate limitation in adapting or managing

herself.  (T. 19-20.)  Specifically, the ALJ found that, although testing had shown a full scale IQ

lower than 70, the evidence did not show that Plaintiff had the requisite deficits in adaptive

functioning to meet the listing because she did not have marked or extreme limitations in any of

the above relevant areas of functioning.  (T. 22.)  Plaintiff argues that the ALJ erred in finding

that she did not have marked or extreme limitations because her employment has all been in a

highly supportive environment, she does not socialize with people outside of her immediate

family, and she has great difficulty with maintaining concentration, persistence and pace and with

changes in tasks and routines.  (Dkt. No. 9, at 20 [Pl.'s Mem. of Law].)  Specifically, Plaintiff

---

[5]     The Court finds that it need not consider Listing 12.05(A) in any detail because,
as the ALJ found, the record clearly does not support a finding that Plaintiff has significant
deficits in adaptive functioning manifested by a dependance on others for personal needs such as
toileting, eating, dressing, or bathing or a cognitive inability to participate in standardized testing
of intellectual functioning.

argues that the ALJ should have afforded more consideration to certain evidence of limitations

than to the opinions from the two consultative examiners who found lesser limitations.  (*Id.*)

        The ALJ's finding related to Listing 12.05 is supported by substantial evidence.

Although Plaintiff is correct that there is some evidence (particularly the reports of Plaintiff and

her mother) that suggests greater deficits in adaptive functioning, the Court cannot say that the

ALJ ignored that evidence or otherwise erred in failing to afford that evidence greater weight.[6]

Notably, the ALJ specifically recounted portions of Plaintiff's hearing testimony related to her

functioning in the decision, but found that her statements about the intensity, persistence and

limiting effect of her impairments were not entirely consistent with the medical and other

evidence.  (T. 24.)  The ALJ also specifically found that "careful review of the totality of the

evidence including the testimony and written statements from treating sources simply does not

provide sufficient evidence to satisfy" the requirements of the Listing.  (T. 26.)  Thus, there is no

merit to Plaintiff's assertion that the ALJ ignored evidence of greater limitations; rather, the ALJ

found that such evidence was inconsistent with the picture of functioning created by the evidence

in the record as a whole.  Such weighing of the evidence was entirely proper.  *See Caridad H. v.

Comm'r of Soc. Sec.*, 18-CV-0893, 2019 WL 3253228, at *5 n.4 (N.D.N.Y. July 19, 2019)

(Dancks, M.J.) (noting that it is "the ALJ's exclusive province to consider all the relevant

---

        [6]        Specifically, Plaintiff asserts in her memorandum of law that the ALJ failed to
consider the evidence that Defendant filed as a Supplemental Transcript.  (Dkt. No. 9, at 13 [Pl.'s
Mem. of Law].)  However, the ALJ specifically referenced that evidence in the relevant decision,
noting that, contrary to the Appeals Counsel's finding, that evidence had been admitted and
considered, but erroneously was left off the exhibit list in the prior decision.  (T. 15-16, 178.)
The ALJ was therefore aware of these records and ostensibly considered them, despite their being
omitted from the original Transcript that was filed by Defendant in this case.

evidence, weigh the respective opinions, and ultimately reconcile conflicting evidence" when rendering a decision) (citing *Aponte v. Sec'y, Dept. of Health & Human Servs.*, 728 F.2d 588, 591 [2d Cir. 1984]).  Plaintiff's argument amounts to little more than a request for this Court to both reweigh the evidence and substitute its own assessment of the evidence for that of the ALJ, something that this Court is not permitted to do.  *See Warren v. Comm'r of Soc. Sec.*, 15-CV-1185, 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) (Carter, M.J.), report-recommendation adopted by 2016 WL 72338947 (N.D.N.Y. Dec. 13, 2016) (Suddaby, C.J.) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing, . . . nor will it determine whether the applicant actually was disabled.") (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 [N.D.N.Y. 1996] [McAvoy, C.J.]).

The opinion evidence in particular provides substantial support for the ALJ's findings. The ALJ appropriately afforded appreciable weight to medical opinions from physicians who found no more than moderate limitations in relevant work-related functioning and there is nothing in those opinions that is inconsistent with the ALJ's finding that Plaintiff does not meet Listing 12.05.  (T. 27-29.)  Specifically, on February 2, 2016, consultative examiner Alicia Mahler, Ph.D., found that Plaintiff had no limitations in making appropriate decisions and relating adequately with others, mild limitations in following and understanding simple directions and instructions, performing simple tasks and appropriately dealing with stress, and moderate limitations in maintaining attention and concentration, maintaining a regular schedule, learning new tasks, and performing complex tasks independently.  (T. 560-61.)  On November 19, 2018, consultative examiner David Schaich, Psy.D., found that Plaintiff had no limitations in

understanding remembering and applying simple directions and instructions or complex instructions, sustaining concentration and performing at a consistent pace, sustaining an ordinary routine and regular attendance at work, maintaining personal hygiene and attire, or being aware of normal hazards and taking appropriate precautions, mild limitations in using reason and judgment to make work-related decisions, and moderate limitations in interacting with others and regulating emotions, controlling behavior and maintaining well-being, and responding to changes.  (T. 686-93.)  The ALJ afforded both of these opinions significant weight, finding they were supported by and consistent with the objective medical evidence as a whole.  (T. 27-28.)

The ALJ also afforded significant weight to the December 18, 2015, opinion of Phyllis Broege, Ph.D., who found that Plaintiff had marked impairment in executive functioning related to simultaneous processing, working memory and cognitive flexibility, and opined that Plaintiff may experience significant difficulties with functional independence and successful integration into the workplace and community if her family support were decreased.  (T. 554.)  However, a marked impairment in executive functioning does not necessarily equate to a marked limitation in any of the broad areas of functioning specified by Listing 12.05, and the Court cannot say that the ALJ committed error in failing to interpret Dr. Broege's opinion as evidence that Plaintiff met the functional requirements of that Listing, particularly given the weight afforded to opinions that were expressed in more vocationally relevant terms that indicate she does not meet those functional requirements.  More specifically, the ALJ found that the objective medical and other evidence as a whole does not support limitations beyond those included in the RFC, as will be discussed in more detail below, and that finding is supported by substantial evidence.  Because Plaintiff has not pointed to anything in the record that would lead this Court to conclude that the

ALJ's findings were not supported by substantial evidence, she has failed to show that the ALJ erred in finding that her intellectual functioning did not meet Listing 12.05.

For all of the above reasons, the Court finds that remand is not warranted on this basis.

### 2.    Whether the ALJ Erred in Weighing the Opinion Evidence

After careful consideration, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 11, at 20-21 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

Plaintiff specifically argues that the ALJ erred in failing to afford controlling weight to the opinion from treating neurologist Dr. Bujarski "in the absence of compelling contradictory evidence by another treating provider."  (Dkt. No. 9, at 21 [Pl.'s Mem. of Law].)  Specifically, Plaintiff argues that the ALJ failed to adopt Dr. Bujarksi's opined limitation that Plaintiff would be off-task more than 20-percent of the workday because (a) under prevailing law, "it is acceptable for treating sources to rely on subjective symptoms when mental disorders are at issue," and (b) the ALJ erred in relying on the opinions of the consultative examiners and ignoring her testimony that she is unable to show up for her part-time job three out of five days each week.  (*Id.*)

As the ALJ found and as Defendant argues, limitations in Dr. Bujarski's opinion such as the indication that Plaintiff would be off-task 20-percent of the workday are inherently related to her dyscognitive seizures, as the medical record shows that she very rarely has convulsive-type tonic-clonic seizures while compliant with medication, but continues to report daily dyscognitive seizures.  (T. 31; Dkt. No. 11, at 21-22 [Def.'s Mem. of Law].)  It is well recognized that the ALJ

may afford controlling weight to the opinion of a treating physician only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record. *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). However, as discussed above in Part III.1. of this Decision and Order, there is no objective evidence supporting the frequency of these dyscognitive seizures, and her physicians have not even been able to objectively determine that they are seizures as opposed to some other phenomenon or side effect. Indeed, these dyscognitive seizures have never been objectively verified despite monitoring and observation. Given that Dr. Bujarksi himself was not wholly certain that Plaintiff's dyscognitive seizures were seizures, the medical evidence contains nothing but Plaintiff's self-reports to substantiate these seizures or their frequency, and the ALJ found Plaintiff's subjective reports to be not wholly credible, the ALJ did not commit error in finding that the off-task and absence limitations in Dr. Bujarski's opinion should not be relied upon when formulating the RFC.

Although Plaintiff cites *Stacey v. Comm'r of Soc. Sec. Admin.*, 799 F. App'x 7 (2d Cir. 2020) for the point of law that treating sources can permissibly rely on subjective reports related to mental disorders, that case is inapposite for multiple reasons. First, the disorder at issue here is not a mental disorder, but rather a neurological disorder (i.e., dyscognitive seizures) and thus the Second Circuit's rationale that psychiatric disorders are often less susceptible to objective testing and assessment is not wholly applicable here. *Stacey*, 799 F. App'x at 2. Most notably, Dr. Bujarksi and other physicians have done diagnostic testing in an attempt to find objective evidence of Plaintiff's dyscognitive seizures, but those tests have not yet substantiated Plaintiff's claims. Second, the Second Circuit specifically noted that the psychiatrist's opinion in question

had been informed not only by the claimant's self-reports, but also by the psychiatrist's "firsthand observations of Stacey's behavior and affect over the course of dozens of meetings." *Id.* Although Dr. Bujarksi treated Plaintiff for her seizures and observed her during such treatment, the record is devoid of any firsthand observations of Plaintiff's dyscognitive seizures during these treatment visits. Because *Stacey* is distinguishable from the situation here, the ALJ did not commit legal error in declining to rely on portions of Dr. Bujarski's opinion that were based wholly on Plaintiff's unsubstantiated subjective reports of symptoms and symptom frequency related to her dyscognitive seizures.

Additionally, as already discussed, the ALJ afforded greater weight to the opinions from the consultative examiners and nonexamining physician who opined that Plaintiff would not experience such significant limitations in remaining on-task as a result of her cognitive and mental impairments. Plaintiff has not provided any argument as to why those opinions are unreliable, and, as already discussed, the ALJ provided sufficient reasons for relying on those opinions. *See Colbert v. Comm'r of Soc. Sec.*, 313 F. Supp. 3d 562, 577 (S.D.N.Y. 2018) (noting that "it is well-settled that a consulting psychiatric examiner's opinion may be given great weight and may constitute substantial evidence to support a decision," and that "a consultative examiner's opinion may be accorded greater weight than a treating source's opinion where the ALJ finds it more consistent with the medical evidence") (collecting cases).

For all of the above reasons, the Court finds that remand is not warranted on this basis.

3.    **Whether the ALJ's RFC Finding Is Supported By Substantial Evidence**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 11, at 20-24 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

First, the ALJ appropriately considered all of Plaintiff's impairments in combination with one another.  Plaintiff appears to argue that the ALJ did not properly consider her migraine headaches, fatigue (resulting from her seizures and medication), irritable bowel syndrome, and depression and anxiety.  (Dkt. No. 9, at 22-23 [Pl.'s Mem. of Law].)  However, the ALJ specifically found that Plaintiff's migraines, depression, and anxiety were severe impairments (i.e., that they "significantly limit the ability to perform basic work activities").  (T. 18.)  The ALJ discussed her seizures and cognitive impairment in great detail, and also noted that she reported various symptoms related to her dyscognitive seizures and her daily abdominal pain, and that she cries and sleeps a lot due to depression.  (T. 19-24.)  The ALJ also made specific findings related to the functional impact of Plaintiff's gastrointestinal symptoms, headaches, diminished alertness related to her seizure medication, as well as addressed her reported low tolerance for stress.  (T. 26-27, 32.)  Given the ALJ's thorough discussion, the Court finds Plaintiff's argument that the ALJ failed to consider any of her impairments, either alone or in combination, is without merit.  The fact that the ALJ did not discuss all of the evidence or allegations related to these impairments in great detail in the decision itself does not mean that the ALJ failed to consider that evidence.  *See Virginia L.S. v. Comm'r of Soc. Sec.*, 18-CV-0937, 2020 WL 529688, at *5 (N.D.N.Y. Feb. 3, 2020) (Suddaby, C.J.) (finding that the ALJ was not required to cite or discuss every piece of evidence that supports or refutes his or her findings) (collecting cases); *Sheri Lee Z. v. Saul*, 19-CV-0268, 2019 WL 6840134, at *4 (N.D.N.Y. Dec.

-20-

16, 2019) (Suddaby, C.J.) (noting that "the relevant legal standards do not require the ALJ to discuss all of the evidence, but rather only show that her decision is supported by substantial evidence") (collecting cases).

Second, as discussed above in Parts III.1. and 2. of this Decision and Order, the ALJ's RFC is supported by the various opinion evidence, and Plaintiff has not offered any persuasive reason as to why those opinions should not have been relied upon.  Nor does Plaintiff challenge the ALJ's reliance on any of the opinions related to the limitations imposed by her documented seizures beyond the ALJ's failure to incorporate the discussed limitations from Dr. Bujarski's opinion.  Because the ALJ appropriately relied on these opinions and the evidence in the record as a whole provides substantial support for the RFC, the ALJ did not commit any error meriting remand when formulating the RFC.

Third, the ALJ did not commit any error in declining to rely fully on the testimony of Plaintiff and her mother.  Tellingly, Plaintiff does not provide any argument as to why the ALJ's failure to afford greater weight to this subjective testimony was contrary to the evidence or inconsistent with the applicable legal standard; rather, she merely asserts in a conclusory fashion that this testimony was credible and consistent with the medical evidence.  (Dkt. No. 9, at 24-25 [Pl.'s Mem. of Law].)  However, the ALJ adequately explained why he reached a contrary conclusion as to portions of that testimony.  (T. 23-32.)  Specifically, after discussing the relevant testimony, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and the other evidence in the record.  (T. 24.)  The ALJ further explained that portions of her testimony

suggesting greater limitations or disability were inconsistent with the objective medical evidence and were belied by some of her reported activities of daily living (including her ability to work on a  part-time basis) that showed a greater level of functioning.  (T. 24-32.)  The decision therefore provided sufficient explanation to show that the ALJ's assessment of Plaintiff's subjective reports was supported by substantial evidence.  *See Darron O. v. Saul*, 20-CV-0090, 2020 WL 6498717, at *9 (N.D.N.Y. Nov. 5, 2020) (Mordue, J.) (finding that the ALJ's discussion of medical evidence that was contrary to the plaintiff's subjective reports provided support for the ALJ's evaluation of those subjective reports); *Brenda Lynn S. v. Comm'r of Soc. Sec.*, 19-CV-0999, 2020 WL 5802272, at *12 (N.D.N.Y. Sept. 29, 2020) (Dancks, M.J.) (finding the ALJ's evaluation of the plaintiff's subjective complaints was supported by substantial evidence where the ALJ cited inconsistency with the objective medical evidence and with other contrary activities of daily living reported by the plaintiff).

For all of the above reasons, the Court finds that remand is not warranted on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: December 11, 2020
        Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge